UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-V-                                               CASE NO. 17-CR-327 (GTS)
                                                                           17-CR-224

IORDAN BOSSEV,
                Defendant.

## SENTENCING MEMORANDUM

DATED:    July 18, 2018                                   Respectfully submitted,
                Syracuse, New York                  OFFICE OF FEDERAL PUBLIC DEFENDER

                                                                         Lisa A. Peebles, Esq.
                                                                         Federal Public Defender
                                                                         Bar Roll No. 507041
                                                                         Office of the Federal Public Defender
                                                                         4 Clinton Square, 3rd Floor
                                                                         Syracuse. New York 13202
                                                                         (315) 701-0080

## INTRODUCTION

The news of Danny's disappearance was devastating and shocking to his parents. Danny's father, Dobrin Bossev, is a science researcher with a PhD for the Navy. Danny's mother, Mia Yordanov, is a manager in a humanitarian aid logistics company. They both thought he was attending his college classes and thriving as a sophomore student at Louisiana State University. Danny's parents were in disbelief when they were contacted by an agent of the Federal Bureau of Investigations and told their son had gone missing with a younger teenage boy. Danny's mother immediately cooperated with the agent and turned over every bit of information about her son, including his computer and any records she had. Like the victim's parents, they too were desperate to locate their son. She described the time he was gone as the darkest days of her life. When she finally got the call her son had been found, Yordanov was elated. Her fears that Danny had been murdered or died in a horrible way had been alleviated. They were grateful the victim and their son were safe and healthy.

At that time, his mother did not anticipate the consequences that would flow from his actions, nor did she appreciate the dangers he would encounter at the fourteen county jails throughout the pendency of his case. While his parents are thrilled their son is back, they continue to worry about him every day. His small stature and the nature of his charges have made him a vulnerable target to other inmates. His mother learned he was assaulted and required hospitalization on three occasions. Her worries have never ended, even upon his return. Both Danny's parents are loving and supportive of him. They will continue to be there for him and anxiously await his return to their lives.

**PRELIMINARY STATEMENT**

On March 29, 2018 Iordan Bossev, "Danny" pled guilty, pursuant to an agreement made under Rule 11(C)(1)(c) of the Federal Rules of Criminal Procedure to four of six counts contained in two separate indictments. He is scheduled for sentencing on August 9, 2018, before the Honorable Glen T. Suddaby in Syracuse, New York.  The four counts he pled guilty to were as follows: Receipt and Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A); 2252A(a)(5)(B); Travel in Interstate Commerce with Intent to Engage in Illicit Sexual Conduct with a Minor, and Persuading and Inducing, and Enticing an Individual to Travel in Interstate Commerce to Engage in Sexual Activity in violation of 18 U.S.C. Sections 2423(b) and 2422(a) respectively.

A Presentence Investigation Report (hereinafter referred to as "PSR") was prepared by the United States Probation Department in anticipation of his sentencing.  According to the PSR, his total offense level is 40 and his Criminal History Category is I, which results in a guideline imprisonment range of 292 to 365 months. The statutory mandatory minimum sentence is 60 months.

This memorandum is submitted on behalf of Danny Bossev to aid the Court's review of the Rule 11(C)1(c) Plea Agreement reached by the parties. The government has agreed that to the extent the agreed-upon disposition departs from the advisory guidelines, the departure is based upon justifiable reasons under U.S.S.G. Section 6B1.2(c)(2). For the reasons set forth below, the defense respectfully submits that a sentence of 72 months in prison followed by a lifetime term of supervised release is more than adequate to satisfy the sentencing factors set forth in 18 U.S.C.

Section 3553(a). The requested sentence is appropriate considering Danny's background, conduct and age at the time of the offense.

## **BACKGROUND AND OFFENDER CHARACTERISTICS/OFFENSE CONDUCT**

The Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005) held that the guidelines are only advisory. *Id.* at 258. In determining a sentence, a Court must not only consider guideline calculations, but also equally take into account all other statutory concerns listed in 18 U.S.C. § 3553 (a)(2), as well as the Defendant's unique circumstances. *See* § 3553 (a).

The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in Paragraph (2) of this subsection. The Court, in determining the particular sentence to be imposed shall consider:

    i.    The nature and circumstances of the offense and the history and characteristics of the defendant; [and]
    ii.    The need for the sentence imposed;
        (1)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (2)    To attend adequate deterrence to criminal conduct;
        (3)    To protect the public from further crimes of the defendant; and
        (4)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).

Danny Bossev is a 21-year-old young man who, at the time of the offense conduct, was only 19 years old and attending Louisiana State University on a scholarship majoring in petroleum engineering. He was born in Bulgaria and moved to Louisiana when he was five years old. His parents are divorced but remain very involved and supportive of him. Danny was only 17 years old when he entered college. He had no criminal history. He was excelling academically in an incredibly difficult academic major. After his first semester, he made the dean's list and

received the President's Award. But everything changed in 2014, after he traveled to Turkey for a semester. While in Europe, Danny became physically ill while visiting Romania and required hospitalization. When he arrived in Turkey, he started drinking alcohol, staying in bed all day and missing classes. His grades suffered and when Danny returned to the United States, he lost his scholarship. He avoided his parents and tried to hide his failings from them. Unbeknownst to Danny, he was suffering from undiagnosed depression.

After he returned to LSU, he continued to neglect his academics. He spent hours playing video games and communicating using online message boards. In April 2015, he began communicating online with the victim, B.R., who at the time was a friend on his gaming team. Their online relationship quickly turned intimate and sexual after B.R. sent unsolicited nude photographs of himself to Danny. On April 26, 2015, B.R. messaged Danny and stated, "I'm gonna take some pics again . . . and some non anal pic I took . . . ." After B.R. sent the photographs, he told Danny, "have fun :3.". Danny began to express his feelings for B.R. and told B.R. he was in love with him. The Skype chat excerpts between the two reflect an intense romantic relationship during which they profess their love for each other.

It also appears from the chats that B.R. was eager to gain Danny's affections by frequent use of compliments, love talk and submissive language. B.R. was an experienced online chatter before he began communicating with Danny. B.R. spent extensive time on image chat forums such as www.ylilauta.org, www.4chan.com and www.steam.com before he met Danny online. Before and during his relationship with Danny, B.R. would openly brag online to other friends and strangers in detail about his sexuality and sexual exploits. Unlike B.R., who appeared to have two prior online relationships before Danny, Danny never had a romantic or sexual relationship online prior to B.R.

5

It's important to note Danny realized it was illegal and inappropriate for him to engage in a sexual, romantic relationship with a 14-year-old. Danny communicated his trepidation to B.R. and acknowledged he should not be "perving" on B.R. It is also the case that Danny had no interest in persuading B.R. to engage in sexually explicit conduct for the purpose of producing a visual depiction. Danny had no interest in collecting, viewing or producing child pornography as is evident from a forensic review of his computers and phone. He did not have any other images of minors, he never searched for child pornography images nor did he ever engage in sex talk with any other minor on any forum.  Rather, Danny believed he was in love with B.R. and made an impulsive decision to run off with him so the two could be together. There were less than 10 sexually explicit photographs found on the computer Danny left in Louisiana when he ran off with B.R. -- hardly the profile of someone who seeks sexually explicit images of underage boys. Danny never took any sexually explicit photos, nor did he request any while the two were together for more than a year. B.R.'s mental maturity appeared similar to Danny's, and he too was fully aware of the legal, moral and practical consequences of running away with Danny. B.R. is physically similar in size to Danny. B.R. was not prepubescent and there was only a five year age difference between them.

During the time they were on the run, Danny offered to send B.R. home and even went so far as to drop him off at a bus station. Within an hour, B.R. called and asked Danny to pick him up. Danny worked to provide for B.R. during their time together and never intended to cause harm to him. There was never any coercion on the part of Danny to engage in sex acts with B.R. He fully understands his actions were regrettable and that running off with the victim caused B.R.'s family great heartache.

To date, Danny has been in custody for more than 18 months. During his incarceration, he has experienced serious physical, mental and sexual abuse. He is only 5'6" tall and weighs less than 150 pounds. When he was housed at the Tangipahoa Parish Jail in Louisiana, he was beaten by several inmates who learned he was accused of a sex offense. This particular jail has a reputation for violence. Less than a year ago, 12 inmates beat another inmate to death because the inmate was charged with a sex offense. Most recently, Danny was beaten at the Albany County Jail by several inmates and required treatment at a local hospital.

In this case, Danny accepts full responsibility for what happened. He understands the gravity of what he did and he intends to use his time in prison to make amends and plan for his future. He is young, intelligent and insightful and has all the makings to lead a productive successful life once he is released from prison.

**LOW RISK OF RECIDIVISM AND LACK OF DANGER TO THE COMMUNITY**

The United States Sentencing Commission has expressed the "likelihood of recidivism and future criminal behavior must be considered" to protect the public. [U.S. SENTENCING GUIDELINES MANUAL], Chapter Four, Introductory Commentary. The Commission has found that offenders without prior arrests have the lowest recidivism rate of all other offenders. *See* U.S. Sentencing Commission, *Recidivism and the "First Offender"* 13-14 (May 2004) [hereinafter "Recidivism Report"].[1] Courts have similarly reasoned that incarceration would have a greater significance for a defendant with no incarceration history. *See United States v. Baker*, 445 F.3d 987 (7th Cir. 2006). In *Baker*, the Seventh Circuit affirmed a below-guideline sentence for a

---

[1] Recidivism rate for defendants with no prior arrests is 6.8%. *See Recidivism and the "First Offender"*, 14 available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf. However, the re-conviction recidivism rate for these offenders is 2.5%. *Id*. Reconviction recidivism rates "limit[] recidivism to the first reconviction during the two year follow-up period." *Id*. at 13.

7

possessor of child pornography where the lower court took into account the defendant's lack of criminal history, [and] his relative young age."[2] *Baker* at 992.  The Court found "consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for "just punishment,' and 'adequate deterrence[.]'"  Id. (quoting 18 U.S.C. § 3553(a)(2)(A)(B)).

Danny's criminal history score is zero because he has never been convicted of any offense, nor has he ever been incarcerated, and he has no prior arrests.  As per the Sentencing Commission, these conditions give him the lowest rate of recidivism.  *See Recidivism Report* at 14.

In this particular case, a guideline sentence is not necessary to protect the public from further crimes of the defendant.  Danny was not searching for underage boys to initiate a sexual relationship nor did he attempt to search for images of minors. The forensic examination of his phone and computer support his only involvement with a minor was in relation to B.R. He was not interested in prepubescent boys. Danny's attraction involved a pubescent teenager who was five-years younger, similar to him in stature and emotional maturity. The defendant submits the agreed-upon disposition of 72 months set forth in the plea agreement is more than sufficient to satisfy the statutory purposes of punishment and would "afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(b)(c).

## CONCLUSION

The recommended guideline range is excessive in light of Danny's background, age, actual conduct, physical size, family support and also because of the low risk of recidivism.  Such a sentence in this case would be sufficient, but not greater than necessary, to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) and in light of *United States v. Booker*, 543 U.S. 220 (2005).

---

[2] Additionally, the Court noted as significant, "the District Court's finding that a prison term would mean more to [the defendant] than to a defendant who had previously been imprisoned." *Baker* at 992.

DATED: July 18, 2018  */s/*

              LISA A. PEEBLES, ESQ.
              Federal Public Defender
              Bar Roll No. 507041
              OFFICE OF FEDERAL PUBLIC DEFENDER
              4 Clinton Square, 3rd Floor
              Syracuse, New York   13202
              (315) 701-0080

cc: Geoffrey Brown, Esq., AUSA
   Janna A. Kulakowski, USPO
   Iordan Bossev